EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* PEDRO GERARDINO, CARMEN GERARDINO y JOAQUÍN TELLECHEA, acusados y apelantes.

No. 2752.—*Visto:* Enero 24, 1927. *Resuelto:* Julio 20, 1927.

1. SEGUROS—"CONTROL" Y REGLAMENTACIÓN EN GENERAL—DELITOS EN GENERAL —PROCESOS Y CASTIGOS—APELACIÓN—REVISIÓN—ERRORES NO PERJUDICIALES —ADMISIÓN DE PRUEBAS—ERROR SUBSANADO POR OTRAS PRUEBAS.—La manifestación de un testigo de que la firma en una solicitud de seguro es la de la persona asegurada a la cual aquél no había visto firmar ni tenido correspondencia con él no es error cuando existe en evidencia, presentado por los apelantes, el recibo dado por la compañía por la cantidad pagada por dicha persona como prima por la póliza que se expidió a virtud de la solicitud.

2. DERECHO PENAL—APELACIÓN Y ERROR, Y CERTIORARI—REVISIÓN—ERRORES NO PERJUDICIALES—ADMISIÓN DE PRUEBA OBJETADA—EN GENERAL.—La admisión de un certificado médico identificado por uno que, si bien no ha visto al médico firmar, conoce su firma por cartas suscritas por él y recibidas por dicha persona, entre ellas una solicitud que él hiciera para ser nombrado médico de la compañía aseguradora de la cual el testigo que identifica es su gerente general, y asegura que la firma en dicho certificado es la del médico que la suscribe, no constituye error.

3. DERECHO PENAL—APELACIÓN Y ERROR, Y CERTIORARI—REVISIÓN—ADMISIÓN DE PRUEBA OBJETADA—ERRORES NO PERJUDICIALES—ERROR SUBSANADO POR OTRA PRUEBA.—La admisión en evidencia de un documento sobre cambio de beneficiario en una póliza no es error cuando existe prueba, presentada por los propios apelantes, al efecto de que uno de ellos—agente de la compañía— recogió la firma del asegurado en dicho documento y admisiones por dicho agente en cuanto al pago y recibo de la prima y expedición de la póliza provisional por él.

4. DERECHO PENAL—APELACIÓN Y ERROR, Y CERTIORARI—REVISIÓN—ERRORES NO PERJUDICIALES—ADMISIÓN DE PRUEBA OBJETADA—ERROR SUBSANADO POR OTRA PRUEBA.—Cuando preguntado un testigo acerca del parentesco del asegurado con los beneficiarios él se refiere a lo que sobre tal parentesco dice un documento ya en evidencia, la admisión de tal declaración en evidencia no constituye error.

5. DERECHO PENAL—JUICIO—OBJECIONES A LAS PRUEBAS—MOCIONES PARA ELIMINAR Y EXCEPCIONES—MOCIONES PARA ELIMINAR PRUEBA EN GENERAL—EN GENERAL.—Solicitada la eliminación de una póliza expedida por no ser igual a la provisional en la que sólo se ha agregado la traducción al inglés de lo que decía el castellano de la provisional sin haberse alterado ni variado su esencia, en ausencia de impugnación en cuanto al contenido del castellano, el motivo de eliminación es frívolo.

6. DERECHO PENAL—EVIDENCIA—PESO Y SUFICIENCIA—SU SUFICIENCIA PARA SOSTENER UNA CONVICCIÓN.—En el caso de autos—proceso por conspiración con el fin de defraudar—se presentó moción de *non suit*, sobre insuficiencia de la prueba, cuya moción sólo se discute en apelación en relación con dos de los acusados. *Se resolvió:* que la prueba de cargo, *prima facie,* era suficiente para establecer la convicción de todos los acusados.

7. DERECHO PENAL—APELACIÓN Y ERROR, Y CERTIORARI—REVISIÓN—CUESTIONES SOBRE LAS PRUEBAS—APRECIACIÓN DE LAS PRUEBAS—PRUEBA CONTRADICTORIA.—Existiendo conflicto en las pruebas de este caso, *se resolvió:* que dicho conflicto fué justamente resuelto por la corte inferior contra los acusados.

SENTENCIA de *R. Díaz Cintrón,* J. (Ponce), condenando a los acusados por delito de conspiración, con costas.   *Confirmada.*

*Felipe Colón Díaz, José R. Gelpí* y *J. Tous Soto,* abogados de los apelantes; *José E. Figueras,* abogado de *El Pueblo,* apelado.

EL JUEZ ASOCIADO SEÑOR FRANCO SOTO, emitió la opinión del tribunal.

Los acusados apelaron de una sentencia que les declaró culpables de un delito de conspiración, consistente en que obrando juntos y de común acuerdo, conspiraron y se pusieron de acuerdo para engañar y defraudar a la compañía de seguros de vida "The Manufacturers' Life Insurance Company," asegurando en dicha compañía a Carlos Juan Gerardino por la suma de $10,000, haciendo saber a la misma que el asegurado se encontraba en buen estado de salud y era un riesgo de primera clase, a sabiendas dichos acusados que el asegurado a la fecha del seguro se encontraba en muy mal estado de salud, sufriendo de tuberculosis pulmonar y bajo tal engaño indujeron a la compañía a asegurar al referido Gerardino por la suma antes indicada, para lo cual dicha compañía expidió una póliza a favor del asegurado, el cual falleció, obteniendo así los acusados que la compañía a la muerte de Carlos Juan Gerardino pagase el importe de la póliza a Pedro y Carmen Gerardino, como beneficiarios de la misma, defraudando de este modo a la compañía en la cantidad de $9,079, importe total de la liquidación de la póliza.

En su alegato los apelantes hacen un señalamiento de varios errores, pero entre éstos, los siguientes han sido estudiados y resueltos en los casos Nos. 2750 y 2751, decididos en el día de hoy: 1, oposición a la representación del gobierno por los Fiscales Romaní y Samalea, el primero como Fiscal del Distrito de Mayagüez y el segundo como Fiscal especial; 2, negativa de la corte a la moción solicitando el

sobreseimiento de la acusación citándose el inciso 2º del artículo 448 del Código de Enjuiciamiento Criminal; 3, desestimación de la moción solicitando un *bill of particulars;* y 4, haberse declarado sin lugar la moción sobre excepciones perentorias.  Estos errores descansan en circunstancias más o menos iguales a los casos mencionados.

[1] Al declarar el testigo Eliseo Font se le mostraron los siguientes documentos: una solicitud de seguro de vida del asegurado; un certificado médico de su examen, un cupón o comprobante de pago, un certificado médico, un documento sobre cambio de beneficiario, así como una póliza de seguro. Al examinar la solicitud sobre el seguro y preguntársele al testigo si la firma que contenía era de Carlos Juan Gerardino, el testigo dijo que era su firma porque fué el documento que recibió solicitando el seguro sobre el cual la compañía expidió la póliza.  Es verdad que el testigo dijo que Gerardino no había firmado a su presencia ni había tenido correspondencia con él, pero de todos modos no hubo error porque los mismos apelantes presentaron en evidencia el recibo que dió la compañía aseguradora por la cantidad que el asegurado pagó en concepto de prima por la póliza que expidió a virtud de tal solicitud.

[2] El certificado médico aparecía firmado por el Dr. P. J. Salicrup y el testigo si bien declara no haberlo visto firmar al Dr. Salicrup, dijo, sin embargo, que conocía su firma por haber recibido "un número de cartas escritas por él y la solicitud que hizo para ser nombrado médico de la compañía," asegurando ser la firma y letra del Dr. Salicrup.

[3] Con el documento sobre el cambio de beneficiario ocurre lo mismo que con la solicitud de seguro.  Tellechea por cartas dirigidas al testigo y en su declaración dice haber recogido en dicho documento la firma del asegurado.  En cuanto al pago de la prima y expedición de la póliza provisional, son hechos que fueron admitidos por Tellechea, quien dijo haber cobrado la prima de $468.50 y expedido la póliza provisional.

[4] No hubo error en la admisión de estos documentos. Se quejan los apelantes, sin embargo, de que la póliza provisional que se envió a Tellechea mientras la compañía expedía la póliza definitiva no estaba en la misma forma que lo era originalmente y por ello se pedía su eliminación. En este documento, como en otros de los presentados, se había añadido por la compañía la traducción en inglés de lo que decía el castellano, pero esta parte no había sido alterada en nada y la traducción no variaba la esencia de los documentos sino más bien facilitaba la comprensión de los mismos. Además, no se hizo impugnación alguna en cuanto al contenido en castellano y el motivo para solicitar la eliminación fué enteramente frívolo.

[5] Asimismo los apelantes se quejan de que el testigo declarase acerca del parentesco del asegurado con los beneficiarios sin saberlo personalmente y sí por referencia. Sin embargo, el testigo se refirió al ser preguntado a lo que decía el documento sobre el cambio de beneficiario. Le constaba por lo que decía tal documento y no hubo el error que se apunta.

[6, 7] De los restantes errores señalados solamente merecen ser considerados los que se refieren a la moción perentoria sobre insuficiencia de la prueba y a la apreciación que de la misma hizo el juez inferior. Examinaremos conjuntamente estos errores.

La moción sobre la insuficiencia de la evidencia más bien se discute en relación con los acusados Pedro y Carmen Gerardino, beneficiarios de la persona asegurada, pues se admite por los apelantes en su alegato que en cuanto a los demás acusados puede existir prueba suficiente para declararles convictos del delito que se les acusa.

La prueba de cargo era suficiente *prima facie* para establecer la convicción de todos los acusados.

La póliza se obtuvo de la compañía aseguradora por medio de engaño y fraude.

Se trataba de una persona, Carlos Juan Gerardino, que

en el momento de solicitar el seguro y obtenerlo ya había sido diagnosticado de estar padeciendo de tuberculosis pulmonar, haciendo gestiones para hacer su ingreso en el Sanatorio Insular de Río Piedras.

El 30 de enero de 1923 el Dr. Osvaldo Goyco escribió al Dr. Pedro Malaret, Subcomisiondo de Sanidad, la siguiente carta:

"Mi estimado amigo: El joven Carlos Juan Gerardino, amigo nuestro, padece de tuberculosis pulmonar, confirmado este diagnóstico por el examen microscópico del esputo. El deseo de la familia del enfermo es trasladar a éste al sanatorio de Río Piedras y como sé lo que valdría su influencia en este asunto, le suplico su intervención para hacer este favor tan beneficioso.

"Le anticipa las gracias su amigo y compañero.

(f) Dr. Osvaldo Goyco,
Com. Mpal. de Benf."

En febrero 2, 1923, Juan B. Huyke, Gobernador Interino, escribió al Dr. W. F. Lippitt, Comisionado de Sanidad, una carta en el mismo sentido, recomendando el ingreso de Carlos Juan Gerardino en el Sanatorio Insular.

En febrero 9, 1923, pocos días después, Carlos Juan Gerardino solicitó y obtuvo una póliza de seguro ordinario de vida por $10,000. La solicitud fué tramitada por Joaquín Tellechea agente de la compañía aseguradora. En el documento se hizo constar que el asegurado estaba en buena salud y así se hizo constar en el certificado médico por el Dr. Salicrup con un endoso del agente Tellechea confirmando la buena salud del asegurado. El 15 de febrero de 1923 ingresaba, no obstante, Carlos Juan Gerardino en el Sanatorio Insular de enfermos tuberculosos, en donde estuvo hasta abril 19, 1923, que salió del asilo pero continuando padeciendo de tal enfermedad.

Al referir el seguro el agente Tellechea al gerente general en San Juan, Eliseo Font, aquél le comunicó por escrito del buen negocio del seguro, pensando que por esta razón tal vez sería aumentado en algunos miles de duros.

Los beneficiarios de la póliza originalmente eran los herederos del asegurado, pero tres días después de solicitarse el seguro, según refiere el agente Tellechea, el asegurado le habló para hacer el cambio de beneficiarios. El agente tramitó asimismo el expediente y el cambio se hizo a favor de Carmen y Pedro Gerardino, hermana y primo, respectivamente, del asegurado, en abril 23 de 1923, asignándose $3,500 a Carmen y $6,500 a Pedro.

Días después, o sea, el 3 de mayo de 1923, falleció Carlos J. Gerardino y los beneficiarios Carmen y Pedro Gerardino reclamaron el seguro tramitándose también por el agente la documentación necesaria para el cobro.

A pesar del estado inequívoco en que se encontraba Carlos Juan Gerardino, padeciendo de tuberculosis pulmonar, en el certificado médico de defunción un tal Dr. Rosado de León hace constar que falleció de bronquitis. Era necesaria esta falsa representación para cobrar el seguro. Era el *finis coronat opus* de la conjura de los acusados en este caso. La certificación, junto con los otros documentos del reclamo, se mandó por Tellechea al gerente general en San Juan para el debido curso del pago. El gerente pudo notar que el certificado no significaba nada porque decía que la bronquitis era un síntoma pero no una enfermedad. Entonces se enmendó el certificado y se hizo constar que el asegurado había fallecido de influenza.

La compañía, sin sospechar siquiera los hechos ocultos y engañosos que sirvieron de base al plan fraudulento y criminal de los acusados, ordenó el pago y extendió los cheques, uno a favor de Pedro Gerardino por $5,901.35, y otro a nombre de Carmen Gerardino por $3,177.65. Estos cheques fueron remitidos a Tellechea, quien los entregó a los interesados, no sin recoger de ellos un recibo de descargo.

La prueba de defensa trata de establecer que el acusado estaba en buena salud al tiempo de solicitar el seguro. La corte no dió crédito, como no podía darle, a esta prueba,

resolviendo el conflicto justamente en contra de los acusados. La declaración del acusado Joaquín Tellechea más bien pone de manifiesto que él desempeñó el papel principal en la conspiración y traicionó el cargo de confianza que como agente representaba a nombre de la compañía defraudada.

*Por todo lo expuesto debe confirmarse la sentencia apelada.*